Chief Justice Rehnquist,
with whom Justice Kennedy and Justice Ginsburg join, dissenting.
The issue in this ease is whether, at the time of the enactment of the Administrative Procedure Act (APA or Act) over 50 years ago, judicial review of factfinding by the Patent and Trademark Office (PTO) under the “clearly erroneous” standard was an “additional requiremen[t].., recognized by law.” 5 U. S. C. § 559. It is undisputed that, until today’s decision, *171 both the patent bench and the patent bar had concluded that the stricter “clearly erroneous” standard was indeed such a requirement placed upon the PTO.* Agency factfinding was thus reviewed under this stricter standard; in my view, properly so, since the APA by its plain text was intended to bring some uniformity to judicial review of agencies by raising the minimum standards of review and not by lowering those standards which existed at the time. Section 12 of the APA, which was ultimately codified as §559, provided that “Nothing in this Act shall be held to diminish the constitutional rights of any person or to limit or repeal additional requirements imposed by statute or otherwise recognized by law.” Pub. L. 404, 79th Cong., 60 Stat. 244. As a result, we must decide whether the “clearly erroneous” standard was indeed otherwise recognized by law in 1946.
This case therefore turns on whether the 89 or so cases identified by the Court can be read as establishing a requirement placed upon agencies that was more demanding than the uniform minimum standards created by the APA. In making this determination, I would defer, not to agencies in general as the Court does today, but to the Court of Appeals for the Federal Circuit, the specialized Article III court charged with review of patent appeals. In this case the unanimous en bane Federal Circuit and the patent bar both agree that these cases recognized the “clearly erroneous” standard as an “additional requirement” placed on the PTO beyond the APA’s minimum procedures. I see no reason to reject their sensible and plausible resolution of the issue.
Nor do I agree with the Court, ante, at 154-155, that either the plain language of § 559 or the original § 12 impose any sort of “clear statement rule” on the common law. See *172 tion 12 of the APA expressly stated that requirements which predated the APA and were “otherwise recognized by law” were unaffected by the Act. If Congress had meant “otherwise recognized by law” to mean “clearly recognized by law,” it certainly could have said so, but did not I also reject the notion that § 559’s separate textual requirement that subsequent statutes superseding or modifying the APA must do so “expressly,” 5 U. S. C. § 559, should be read to impose a nontextual clear statement rule for the antecedent common-law requirements that the APA supplemented.. There is no tension whatsoever between the goals of preserving more rigorous common-law requirements at the time of enactment and ensuring that future statutes would not repeal by implication the APA’s uniform supplementary procedures.
I therefore dissent for the reasons given by the Court of Appeals.

It appears that even the PTO acquiesced in this interpretation for almost 50 years after the enactment of the APA. See Brief for Pharmaceutical Research and Manufacturers of America as Amicus Curiae 7, and n. 13 (the PTO first argued for the applicability of the APA’s standards of review to its patentability factfinding before the Federal Circuit in 1995).